UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

T<small>ERRY</small> T<small>RIGGS</small>,

        Plaintiff,               Case No. 2:20-cv-8

v.                                     Honorable Robert J. Jonker

U<small>NKNOWN</small> B<small>ARNHARDT</small> et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith, McLean, and Lalonde. The Court also will dismiss Plaintiff's claims under the Fourth and Fourteenth Amendments against remaining Defendant Barnhardt. Plaintiff's retaliation claim against Defendant Barnhardt remains in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF officials in their official and personal capacities: Sergeant Unknown Barnhardt; Correctional Officer Scott Smith; Grievance Coordinator Michael McLean; and Assistant Deputy Warden Dave Lalonde.

Plaintiff alleges that, on November 4, 2019, Defendant Barnhardt abused his authority by moving Plaintiff from URF-West, which housed inmates in dorm settings, to URF-East, which houses inmates in two-person cells. Defendant Barnhardt ordered the move without issuing a notice of intent or a misconduct, and Plaintiff was not allowed to take his personal property with him at the time of the move. Plaintiff received his property the following day. However, during the return of the property, Defendant Barnhardt ordered Defendant Smith to confiscate Plaintiff's JP5 tablet[1] as contraband. Plaintiff alleges that Defendants acted in violation of policy, did not explain why they were taking the JP5, and did not issue either a misconduct ticket or a notice of intent (NOI) to take the property. Defendant Smith did, however, issue a contraband removal record on November 5, 2019, which listed the confiscated items. (Contraband Removal Record, App. D to Compl., ECF No. 1-6, PageID.21.)

---

[1] The JP5 is one of a series of tablet computers designed for correctional facilities and sold through JPay, a privately held corrections-related service provider that contracts with various state departments of corrections, jails, and private federal prisons to provide services such as money transfers, email, and video visitation. *See* https://en.wikipedia.org/wiki/JPay.

Plaintiff filed a grievance against Defendants Barnhardt and Smith on November 12, 2019. Grievance Coordinator Defendant McLean removed the grievance from the grievance-submission box, but did not issue a grievance number.

On November 16, 2019, Plaintiff asked Defendant Barnhardt why he was refusing to return the JP5 tablet. Defendant Barnhardt responded that he had planned to return the tablet to Plaintiff, but, when Plaintiff filed a grievance, Barnhardt decided that he would make sure that Plaintiff would not get his tablet back. Plaintiff told Barnhardt that what he was doing was illegal. Barnhardt replied that, as a sergeant, he could do whatever he wanted. Defendant Barnhardt informed Plaintiff that he would have Defendant McLean hold and delay processing Plaintiff's grievance. Defendant Barnhardt also told Plaintiff that he personally intended to hear the misconduct charge, despite having been part of writing the misconduct ticket.

On November 19, 2018, Plaintiff asked Defendant McLean why he had not processed Plaintiff's grievance against Defendant Barnhardt. Defendant McLean told Plaintiff that he was not going to process the grievance until the misconduct Defendant Barnhardt intended to write had been resolved. Defendant McLean allegedly told Plaintiff that he was not going to go against Defendant Barnhardt. McLean also told Plaintiff that his grievance would be rejected and that, if he appealed, Plaintiff would be placed on grievance restriction.

On November 26, 2019, 21 days after Plaintiff filed his grievance against Defendants Barnhardt and Smith, Defendant Barnhardt induced Defendant Smith to write a Class-III misconduct[2] ticket against Plaintiff based on possessing contraband. Officer Machinski reviewed the misconduct ticket with Plaintiff that same day. Plaintiff's grievance was rejected as non-grievable the following day.

---

[2] Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

Defendant Barnhardt acted as the hearing officer on the misconduct ticket, despite his involvement in the conduct in issue and ostensibly in violation of MDOC Policy Directive 03.03.05. Plaintiff objected to Defendant Barnhardt presiding over the misconduct hearing. Defendant Barnhardt found Plaintiff guilty of the misconduct and imposed a sanction of counseling or reprimand. (Class-III Misconduct Hr'g Rep., App. F to Comp., ECF No. 1-8.) Barnhardt listed a variety of contraband information found both on Plaintiff's JP5 tablet and in handwritten and typed form: instructions on how to access the Tor browser and the dark web, which, according to the misconduct hearing report, Plaintiff admitted he had shared with others; material explaining how to falsify documents and obtain money through forged and fraudulent documents; and material on "Dynastic Ministries," a group with a structure and activities consistent with an MDOC Security Threat Group, rather than a recognized religious group. Defendant Barnhardt found that the contraband information served no legitimate purpose and presented a threat to the safety and order of the facility. He therefore ordered that the written material be disposed of and that Plaintiff be provided 30 days in which to send his JP5 out of the facility at his own expense. (*See* Misconduct Hr'g Report, ECF No. 1-8, PageID.23.)

Plaintiff contends that Defendants Barnhardt and Smith seized and searched Plaintiff's JP5 tablet without probable cause or reasonable suspicion, in violation of the Fourth Amendment. Plaintiff also contends that Defendants Barnhardt, Smith, and McLean conspired to retaliate against Plaintiff for exercising his First Amendment right to file a grievance. In addition, Plaintiff complains that Defendants Barnhardt and Smith deprived him of his Fourteenth Amendment right to due process by transferring him to a different cell without notice or a hearing and by failing to follow prison policy in the issuance and hearing on the misconduct charge. Further, Plaintiff contends that Defendants Barnhardt, Smith, McLean, and Lalonde violated his

4

Fourteenth Amendment right to substantive due process by confiscating Plaintiff's legally purchased JP5 player, searching it, ultimately destroying it, and/or by acquiescing in that conduct. Plaintiff alleges that Defendants' conduct also violated Article I, §§ 2, 3, 11, and 17 of the Michigan constitution.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

5

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Handling of Grievances

Plaintiff alleges that Defendant McLean failed to follow policy in the processing of Plaintiff's grievances and in rejecting Plaintiff's grievance about the taking of the JP5 tablet. Plaintiff alleges that Defendant Lalonde acquiesced in Defendant McLean's actions and acquiesced in the conduct of Defendants Barnhardt and Smith, which was the subject of Plaintiff's grievance.

To the extent that Plaintiff alleges that Defendants McLean and Lalonde failed to properly supervise their subordinates, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d

881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, to the extent that Plaintiff claims that Defendants McLean and Lalonde failed to supervise their subordinates, his complaint against them must be dismissed for failure to state a claim.

Further, to the extent that Plaintiff claims that Defendants McLean and Lalonde failed to follow prison policy concerning the handling of grievances, thereby depriving Plaintiff of his right to due process, Plaintiff fails to state a claim against Defendants. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Given that Plaintiff makes no other allegations against Defendant Lalonde, Plaintiff's complaint against Defendant Lalonde will be dismissed for failure to state a claim.

## IV. Illegal Search & Seizure

Plaintiff contends that Defendants Barnhardt and McLean illegally confiscated and searched Plaintiff's papers and JP5 tablet without a valid penological interest, in violation of the Fourth Amendment. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

The *Hudson* Court recognized that, while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523-24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28. For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment clearly did not prohibit Defendants from searching his possessions and confiscating items that appeared to be contraband, including the written pages. For the same reasons and based on the legitimate penological interests identified in *Hudson*, Defendants had an interest in determining if any of the illegal written material

8

(or other contraband) was also stored on Plaintiff's electronic device. *See Rainwater v. Ahlin*, No. 1:18-cv-49, 2018 WL 2251713, at *9 (E.D. Cal. May 15, 2015) (dismissing for failure to state a claim a prisoner's claim that prison officials violated the Fourth Amendment by searching his thumb drive without a warrant); *c.f. DiGuiseppe v. Ward*, 698 F.2d 602, 605 (7th Cir. 1983) (holding that, where search of the content of a prisoner's cell is reasonable under the Fourth Amendment, reading and seizing the prisoner's diary also is reasonable). Searches of electronic devices and storage are reasonably related to and necessary for the safety and security of guards and others in the facility, order within the facility, and the efficiency of the facility's operations. *Johanneck v. Ahlin*, No. 1:18-cv-51, 2018 WL 1014454, at *14 (E.D. Cal. Feb. 21, 2018) (holding that prison's regulations for searching electronic devices and storage are reasonably related to prison's legitimate interest in removing illicit digital material and securing the facility).

In sum, because Plaintiff had no reasonable expectation of privacy in his cell or in the possessions stored in his cell, he does not state a Fourth Amendment claim for the search or seizure of his JP5.

## V. Fourteenth Amendment: Procedural Due Process

Plaintiff contends that Defendants violated his right to procedural due process by transferring him to a new cell without notice or a hearing and by failing to follow the procedures set forth in policy for issuing misconduct charges, processing and acting on grievances, and taking property.

To the extent that Plaintiff alleges that Defendants violated prison policy, he fails to state a § 1983 claim. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

9

Defendants' alleged failures to comply with state administrative rules or policies do not rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Plaintiff therefore fails to state a due process claim based on any Defendant's violation of MDOC policy.

To the extent that Plaintiff alleges that his transfer from URF-West to URF-East violated his right to due process, Plaintiff also fails to state a claim. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff's transfer from URF-West to URF-East resulted in a far more limited change to his conditions of confinement than the placement in segregation at issue in *Sandin*. Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification—much less to be housed in a particular type of cell. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). Plaintiff alleges only that prisoners housed in URF-West live in a dorm setting, whereas prisoners housed in URF-East reside in two-person cells. Plaintiff's allegation fails to demonstrate the sort of atypical and significant hardship that would give rise to a liberty interest. Accordingly, he fails to state a due process claim.

Finally, to the extent that Plaintiff alleges that Defendant Barnhardt deprived him of his property without due process by presiding over a biased hearing, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case, because he has not even alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Accordingly, Plaintiff's due process claims against all Defendants will be dismissed.

## VI.    Retaliation

Plaintiff alleges that Defendants Barnhardt, Smith, and McLean retaliated against Plaintiff or conspired to retaliate against Plaintiff for filing a grievance against Defendant Barnhardt.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff sufficiently alleges the first prong of the retaliation standard. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Upon initial review, the Court concludes that Plaintiff has alleged facts sufficient to state all three prongs of a retaliation claim against Defendant Barnhardt.

However, Plaintiff's retaliation claims against Defendants Smith and McLean fail at the second step of the *Thaddeus-X* standard. Plaintiff alleges that Defendant McLean did not follow prison policy in processing Plaintiff's grievance against Defendant Barnhardt. Defendant McLean's failure to process a grievance does not amount to adverse action. The Sixth Circuit repeatedly has held that placement on modified grievance access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. Title 42 U.S.C. § 1997e(a), which requires prisoners to exhaust their administrative remedies before coming to federal court only requires the exhaustion of "such administrative remedies as are

13

available." *See Kennedy*, 20 F. App'x at 471. If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a). *Id.* For the same reasons that placement on modified grievance access does not amount to adverse action, an official's rejection of a grievance is not sufficiently adverse to state a retaliation claim. Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016) (rejection or denial of a grievance is not adverse); *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim). Plaintiff therefore fails to state a claim against Defendant McLean.

To the extent that Plaintiff alleges that Defendant Smith did not file his misconduct charge until three weeks after confiscating Plaintiff's JP5 and after Plaintiff filed his grievance, Plaintiff also fails to allege adverse action. Although the Sixth Circuit repeatedly has recognized

14

that the filing of a false and retaliatory misconduct charge may be adverse action, *see, e.g., Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (citing *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010)), Plaintiff at no time disputes the truth of the misconduct charge. Nor does he contest what Smith said in the misconduct charge. Indeed, he admits that Smith confiscated the items as contraband at the time Plaintiff was moved to a new cell—well before Plaintiff filed his grievance against Defendant Barnhardt. The mere fact that Plaintiff believes that prison policy required Smith to file the misconduct charge earlier than he did does not render Smith's action adverse. Plaintiff thus fails to state a retaliation claim against Defendant Smith.

Although the Court concludes that Plaintiff has failed to state a retaliation claim against Defendants McLean and Smith arising out of their own actions, Plaintiff attempts to hold Defendants McLean and Smith liable for Defendant Barnhardt's actions and intent by making a conclusory allegation that they conspired in Defendant Barnhardt's actions to retaliate against Plaintiff.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a

"possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's conclusory allegations are insufficient to show that Defendants McLean and Smith conspired with Defendant Barnhardt to retaliate against Plaintiff. Plaintiff has provided no allegations establishing an agreement between Defendants. Instead, Plaintiff's claims of conspiracy by Defendants Mclean and Smith rest on conclusory assumptions. With respect to Defendant McLean, Plaintiff assumes an intent to conspire from the fact that McLean delayed processing Plaintiff's grievance, for the express reason that McLean anticipated that either Defendant Barnhardt or Smith would file a Class-II misconduct charge based on the property they had already confiscated—which would have resulted in a different mechanism for Plaintiff to have his concerns addressed.[3] The fact that Defendant McLean was aware that Defendant Barnhardt might issue a misconduct charge on the confiscated property does not demonstrate that Defendant McLean intended to participate in issuing a *retaliatory* misconduct.

Similarly, Plaintiff's allegation concerning Defendant Smith's alleged conspiracy with Defendant Barnhardt is limited to an unsupported inference that Defendant Smith, who had originally issued the contraband removal notice, eventually wrote a misconduct charge against Plaintiff because Defendant Smith shared a retaliatory motive with Defendant Barnhardt—rather than because Plaintiff had contraband (a fact that Plaintiff does not dispute). As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. As the Supreme Court recognized in *Iqbal*, although parallel conduct may be consistent with an

---

[3] Under prison policy, a grievance may not be filed about a decision made in a Class-II or Class-III misconduct hearing. MDOC Policy Directive (PD) 03.02.130 ¶ J(11).

16

unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

In light of the far more likely possibility that the independent, nonretaliatory actions of Defendants Smith and McLean were unrelated to Defendant Barnhardt's motives, Plaintiff fails to state a plausible conspiracy-to-retaliate claim against Defendants McLean and Smith for actions taken by Defendant Barnhardt.

Accordingly, the Court will dismiss Plaintiff's retaliation and conspiracy-to-retaliate claims against Defendants McLean and Smith. Plaintiff's retaliation claim against Defendant Barnhardt remains in the case.

## VII. Motion for Preliminary Injunction

Also pending before the Court is Plaintiff's motion for preliminary injunction. Plaintiff contends that the taking of his JP5 player, as an illegal seizure and in violation of Plaintiff's right to due process, causes Plaintiff irreparable damage. Specifically, he contends that the JP5 player contained stored photographs that are irreplaceable, as the MDOC now prohibits prisoners from receiving original photographs through the mail. Plaintiff also suggests that he remains at unspecified risk of further retaliation by Defendants.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the

likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Indeed, the Court has concluded that Plaintiff fails to state claim under either the Fourth or the Fourteenth Amendment. While Plaintiff's retaliation claim against Defendant Barnhardt remains in the case, it is far from clear that Plaintiff has a substantial likelihood of success on that claim. Although the Court makes no

18

final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, Plaintiff's allegations fail to demonstrate irreparable harm that is avoidable by a preliminary injunction. Even at the time Plaintiff filed his motion, the 30-day period for mailing out the JP5 player had passed. As a result, it appears that the JP5 player is no longer stored at URF, and injunctive relief will not return the JP5 player to Plaintiff. Harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. While Plaintiff may not be fully satisfied by compensation for his pictures, compensation is now the only remedy available to him. In addition, Plaintiff's wholly conclusory allegations about potential future retaliation do not demonstrate irreparable harm.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith, McLean, and Lalone will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourth and Fourteenth Amendment claims against remaining Defendant Barnhardt. The Court also will deny Plaintiff's motion for

19

preliminary injunctive relief. Plaintiff's retaliation claim against Defendant Barnhardt remains in the case.

An order consistent with this opinion will be entered.


Dated: __March 10, 2020__                /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE