UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY TRIGGS, #214324,

        Plaintiff,

v.

UNKNOWN BARNHARDT, et al.,

        Defendants.
_____/

Case No. 2:20-cv-8

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendant Sergeant (Sgt.) Bernhardt's motion for summary judgment based on exhaustion.  (ECF No. 18.)

Plaintiff state prisoner Terry Triggs filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 13, 2020.  (ECF No. 1.)  In his verified complaint, Triggs asserted that employees of the Chippewa Correctional Facility (URF) in Kincheloe, Michigan unreasonably searched and seized his belongings, violated his due process rights, retaliated against him, and conspired against him.  (*Id.*)  In its March 10, 2020 Opinion (ECF No. 5) and Order (ECF No. 6), this Court dismissed all of Triggs's claims except for his First Amendment claim against Sgt. Bernhardt[1] for ordering the issuance of a retaliatory misconduct ticket.  Sgt. Bernhardt now moves for

---

[1] Triggs referred to Sgt. Bernhardt as "Unknown Barnhardt" in his complaint. However, in subsequent pleadings both parties have used the spelling "Bernhardt."

summary judgment. (ECF No. 18.) Bernhardt argues that Triggs failed to exhaust his administrative remedies with respect to his retaliation claim. Specifically, Bernhardt says that because Triggs did not raise retaliation as a defense during his misconduct hearing, he did not exhaust his claim.

Because it is undisputed that Triggs failed to raise retaliation during his initial misconduct hearing, and this Court has held that raising a misconduct-related claim for the first time on appeal is not sufficient to exhaust, the undersigned respectfully recommends that the Court grant Bernhardt's motion for summary judgment.

## II.   Factual Allegations

In his verified complaint, Triggs asserted that, on November 4, 2019, Sgt. Bernhardt exercised his authority to transfer Triggs from one unit in URF to another. (ECF No. 1, PageID.5.) When Triggs was moved, his property was not moved along with him. (*Id.*) Instead, on November 5, 2019, Bernhardt conducted a search of Triggs's property along with URF Corrections Officer (CO) Smith, and confiscated Triggs's JP5 tablet[2] as contraband. (*Id.*, PageID.6.) Triggs says that, on November 12, 2019, after his JP5 tablet had not been returned to him and he had not received a misconduct or notice of intent regarding the tablet, he submitted a Step I grievance form against Sgt. Bernhardt and CO Smith. (*Id.*) Four days later, on November 16, 2019, Triggs confronted Bernhardt and asked why his tablet had not been returned

---

[2]   As explained in the Court's March 10, 2020 Opinion, "[t]he JP5 is one of a series of tablet computers designed for correctional facilities and sold through JPay, a privately held corrections-related service provider that contracts with various state departments of corrections, jails, and private federal prisons to provide services such as money transfers, email, and video visitation." (ECF No. 5, PageID.2.)

2

to him. (*Id.*) Bernhardt allegedly told Triggs that he had intended to give the tablet back, but because Triggs wrote a grievance against him, he was "going to make sure that [Triggs] gets nothing back." (*Id.*) Sgt. Bernhardt also indicated that he was going to ask URF Grievance Coordinator (GC) Michael McLean to wait to process Triggs's November 12 grievance until after he had CO Smith issue Triggs a misconduct for contraband. (*Id.*) According to Triggs, GC McLean later indicated that he was adhering to Sgt. Bernhardt's request. (*Id.*)

On November 26, 2019, Sgt. Bernhardt filed a misconduct ticket against Triggs for contraband, and another staff member reviewed it. (*Id.*, PageID.7.) The next day, Triggs's grievance was processed and rejected as non-grievable. (*Id.*) On December 4, 2019, Sgt. Bernhardt, over Triggs's objection that he was directly involved in the underlying incident, conducted Triggs's Class III misconduct hearing. (*Id.*) Sgt. Bernhardt found Triggs guilty on the misconduct, and Triggs appealed, asserting retaliation and lack of due process. (*Id.*)

According to Sgt. Bernhardt, Triggs did not assert that the misconduct was issued in retaliation for his prior grievance during the December 4 misconduct hearing. (ECF No. 20-2, PagesID.203.) Further, GC McLean never prevented Triggs from filing grievances or delayed processing the grievances he did submit. (ECF No. 20-1, PageID.166.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Exhaustion Analysis

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

---

[3]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

4

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). This is true even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

5

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting Booth, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt informal resolution within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms:

"The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the

grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[4] the inmate must raise the issue during the

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered

initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).[5] If the inmate is claiming to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue. *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

As discussed above, Triggs's sole remaining claim is that Sgt. Bernhardt ordered CO Smith to issue Triggs a misconduct ticket in retaliation for Triggs filing a grievance. (ECF No. 5, PageID.20.) Sgt. Bernhardt argues that because Triggs did

---

"major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[5] In *Siggers*, the Sixth Circuit evaluated the exhaustion of a misconduct-related retaliation claim by looking to the misconduct appeal process. 652 F.3d at 693-94. However, the undersigned acknowledges that in an unpublished opinion written the same year, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011). But it is published decisions that are binding within the Circuit, and *Reynolds-Bey* is not a published decision. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). And Triggs does not assert that he filed a grievance alleging that Bernhardt issued him a retaliatory misconduct ticket.

9

not raise retaliation in his initial misconduct hearing, he failed to exhaust his remaining claim. (ECF No. 19, PageID.111.) Triggs asserts that because he raised retaliation *on appeal*, he exhausted his remaining claim.[6] (ECF No. 1, PageID.) The parties do not dispute the circumstances surrounding Triggs's misconduct hearing and subsequent appeals: Triggs does not claim to have raised retaliation during his initial misconduct hearing, and Bernhardt does not contest that Triggs raised retaliation during his subsequent appeal.[7] This is consistent with Triggs's Misconduct Hearing Report and Misconduct Appeal as shown below.

---

[6] The undersigned notes that Triggs's brief in response to Bernhardt's motion for summary judgment triggers a bit of confusion because it focuses primarily on grievance URF-1911-3102-27A, which he says was improperly rejected it as non-grievable. But his claims of improper rejection are not relevant to exhaustion of the remaining claim. In Triggs's complaint, he asserts that the improperly rejected grievance concerned his Fourth Amendment claim, and that he exhausted his First Amendment retaliation claims through the misconduct hearing process. (ECF No. 1, PageID.5.) Because Triggs's First Amendment claim is the only remaining claim, the undersigned declines to determine whether grievance URF-1911-3102-27A was improperly rejected.

[7] While there are no factual disputes regarding Triggs's misconduct hearing and appeal that bear on exhaustion, the circumstances surrounding Triggs's misconduct hearing are uniquely concerning. Specifically, MDOC PD 03.03.105 ¶ AAA provides that staff conducting a Class III misconduct hearing "shall have had no prior direct involvement in the matter at issue." According to Triggs's sworn statements, Bernhardt helped search and seize the contraband that served as a basis for Triggs's misconduct, and then served as the hearing officer for the misconduct. (ECF No. 1, PageID.5-7.) But Triggs's procedural due process claim based on the alleged violation of this policy was dismissed by this Court. (ECF No. 5, PageID.55.) The undersigned is only tasked with determining whether Triggs exhausted his retaliation claim. And Triggs does not claim that he accused Bernhardt of retaliation during the misconduct hearing, and that Bernhardt omitted the accusation on the hearing report.

| CLASS II AND III MISCONDUCT HEARING REPORT | | | | | 10/10 |
|---|---|---|---|---|---|
| **GENERAL INFORMATION** | | | | | |
| Prisoner Number 214324 | Prisoner Name Triggs | | | Facility Code URF | Violation Date 11/05/19 |
| **MISCONDUCT VIOLATION** | | | | | |
| Hearing Class II ☐ Class III ☒ | Misconduct Charges Contraband | | APPENDIX – F | | |
| Misconduct Charge if Changed by Hearing Officer | | | | Plea ☐ Guilty | ☒ Not Guilty |
| **WAIVER OF HEARING** | | | | | |
| I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed. | | | Prisoner's Signature | | Date |

**HEARING REPORT (Do Not Complete If Hearing Waived)**

Evidence and/or prisoner statement in addition to misconduct report: Prisoner is present at hearing in Control Center. Prisoner pleads not guilty. The prisoner states that he does not believe that his JP5 or the material on it can be classified as contraband. He asks how material he authored himself could be contraband. He states the material on the Tor network and browser was copied from Time magazine and admits he had written out multiple copies to share with other prisoners. He denies knowing that the material on forging documents was in his property.

Evidence includes: JP5 containing "Dynastic Ministries" material and material titled "The Master's Deck." Multiple copies of material giving instructions on how to access and use the "Tor" browser and Dark Web, material on how to falsify documents and to obtain money through these forged/fraudulent documents, and Dynastic Ministries" material.

Reasons for findings: Prisoner found guilty based on the preponderance of evidence. Dynastic Ministries is not a MDOC recognized religious group and appears to be an entirely prisoner created group with no corresponding outside organization. They have an established prisoner leadership structure (which violates PD 05.03.118) along with concepts and activity consistent with a validated MDOC Security Threat Group (Intolerant/Subversive), not a religious group. The JP5 player has been used to conceal contraband material of this group, as well as material titled "The Master's Deck" which is almost identical in content, and references, several restricted publications making the JP5 contraband. The Tor browser is an application used to access the Dark Web anonymously and is frequently used in illegal activity. The instructions on how to falsify documents and commit various types of fraud in violation of law serves no legitimate purpose. The written material and material concealed on the JP5 is a threat to the safety and good order of the facility and interferes with the rehabilitation of prisoners prohibited by PD 05.03.118 paragraph D and several sections of paragraph NN. The written material will be turned over to the institution for disposal in accordance with PD 04.07.112 paragraph LL section 4 after being held for 30 days for prisoner appeal. Prisoner has 30 days to send the JP5 out at his expense or it will be turned over for disposal.

**FINDINGS**

| Charge 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ____ |
|---|---|---|---|---|
| Charge 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ____ |
| Charge 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ____ |
| Charge 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ____ |

**SANCTIONS (Hearing Investigator enters begin and end dates)**

| ____ Days Toplock | Begins: ____ | Ends: ____ | ☒ Counseling/Reprimand (Class III only) |
|---|---|---|---|
| ____ Days Loss of Privileges | Begins: ____ | Ends: ____ | ☐ $____ Restitution (Class II only) |
| ____ Hours Extra Duty | Begins: ____ | Ends: ____ | |

Property Disposition if Applicable: <u>See findings</u>

Misconduct Hearing Report given to Hearing Investigator for Delivery to Prisoner this date: ____

| Hearing Officer's Name (Print) Sgt. Bernhardt | Hearing Officer's Signature SGT [signature] | Hearing Date 12/04/19 |
|---|---|---|
| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |

Distribution: Counselor File; Record Office File (Class II); Prisoner

(ECF No. 1-8, PageID.23.)

## CLASS II AND CLASS III MISCONDUCT APPEAL

**INSTRUCTIONS**

1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class I or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
3. Class II hearing decisions are appealed to the Deputy Warden.
4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
5. State your reason for appeal.
6. Attach a copy of misconduct and hearing report.

A rehearing shall be ordered if any of the following are found to have occurred:
  a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
  b. The prisoner's due process rights were violated.
  c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
|---|---|---|---|---|
| 214324 | T. TRIGGS | MARQUETTE | 341 | 11/06/19 |

| Date of Hearing | Misconduct Class: ☐ II ☒ III  Charge(s) | Sentence |
|---|---|---|
| 12/4/19 | CONTRABAND | COUNSEL / REPRIMAND |

**BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:** (A) MY HEARING WAS CONDUCTED IN VIOLATION OF URF-CHIPPEWA FACILITY OPERATING PROCEDURES 03.03.105(C), (PAGE 1 of 4), WHICH STATES IN PART 8 INFORMATION: ("IN ACCORD WITH PD 03.03.105 THE PRISONER WILL BE HEARD BY MEMBER OF THE CLASS-III - MISCONDUCT HEARING TEAM (THAT CONSIST OF EITHER A RUM, ARUS, PC OR CO) IN HIS SPECIFIC HOUSING UNIT.") SGT. BARNHARDT IS NOT DESIGNATED BY THE WARDEN TO HEAR MISCONDUCTS AND HAD NO AUTHORITY TO HEAR MY CLASS III - MISCONDUCT BECAUSE HE IS NOT A MEMBER OF THE CLASS-III HEARING TEAM AS OUTLINED ABOVE;

(B) MY DUE PROCESS RIGHTS TO HAVE A FAIR AND IMPARTIAL HEARING, BY AN UNBIASED, FAIR AND IMPARTIAL MEMBER OF THE HEARING TEAM WITH NO DIRECT INVOLVEMENT: PER URF-OP 03.03.105(C), (PAGE 1 of 4), INFORMATION: #8 - STATES IN PART: "A PRISONER MUST, HOWEVER, 2. BE GIVEN AN IMPARTIAL HEARING BEFORE A MEMBER OF THE HEARING TEAM WHO HAS NOT HAD PREVIOUS DIRECT INVOLVEMENT."

MY JPS - PLAYER AND OTHER RELIGIOUS MATERIALS WERE ILLEGALLY SEIZED AND TURNED OVER TO SGT. BARNHARDT ON 11-5-19 FOR INVESTIGATION. SGT. BARNHARDT HELD MY PROPERTY INVESTIGATED IT'S CONTENT FOR 21-DAYS. ON 11-27-19 SGT. BARNHARDT BROUGHT THE MISCONDUCT TO THE UNIT AND HAD C/O MATCHINSLA REVIEW ME ON IT AS BARNHARDT STOOD AT THE PODIUM WITH HIM. (SEE UNIT BASE CAMERAS AT 2050).

SGT. BARNHARDT WAS DIRECTLY INVOLVED AS THE STG - INVESTIGATOR AND VIOLATED MY RIGHTS TO AN FAIR AND IMPARTIAL HEARING; HEARING ME ON MY MISCONDUCT.

(C) C/O SMITH AND SGT. BARNHARDT AND MCLEAN CONSPIRED TOGETHER TO RETALIATE AGAINST ME FOR ENGAGING IN MY (do not write below this line) PROTECTED CONDUCT RIGHT TO

**APPEAL RESPONSE:**

THIS HEARING WAS HELD IN ACCORDANCE WITH ADMINISTRATIVE RULE 791.3310 AND POLICY DIRECTIVE 03.03.105. THE HEARINGS OFFICER DETERMINED BY A PREPONDERANCE OF THE EVIDENCE THAT THE PRISONER WAS GUILTY OF THE STATED CHARGE. THE PRISONER HAS NOT PROVIDED ANY SUBSTANTIATED EVIDENCE THAT WOULD WARRANT OVERTURNING THIS HEARING. NO DUE PROCESS VIOLATION EXISTS.
**APPEAL IS DENIED**

☒ Disapproved  ☐ Approved  ☐ Returned without action – not filed within 15 days

Signature of Warden; Deputy Warden (Class II); Signature of ADW/WCC/WHV Captain (Class III)  Date 12/20/19

DISTRIBUTION: WHITE – Deputy Warden (Class II); ADW/WCC/WHV Captain (Class III); CANARY – Retained by Prisoner

(ECF No. 1-5, PageID.19.)

> DATE OF HEARING: 12/04/19                                   APPENDIX-C
> SENTENCE: COUNSEL REPRIMAND:
> BASIS OF APPEAL:
>
> EXERCISE MY FIRST AMENDMENT RIGHT TO FILE A GRIEVANCE. ON 11/18/19, I FILED A GRIEVANCE ON C/O S. SMITH AND SGT. BARNHARDT FOR ILLEGAL SEARCH AND SEIZURE OF MY LEGALLY PURCHASED JP5-PLAYER WITHOUT VALID REASON OR PROBABLE CAUSE. NO (N.O.I OR MISCONDUCT) AND DUE PROCESS VIOLATIONS.
>
> THE GRIEVANCE COORDINATOR HELD MY GRIEVANCE INTENTIONALLY NOT PROCESSING MY NON-FRIVOLOUS COMPLAINT UNTIL 11/27/19. REJECTING IT AS NON-GRIEVABLE BECAUSE I AM NOT ALLOWED TO GRIEVE A MISCONDUCT OR HEARING PROCESS. (SEE GRIEVANCE AND REJECTION ATTACHED AS APPENDIX-(B AND B).
>
> AT THE TIME I FILED THE GRIEVANCE, NO MISCONDUCT OR N.O.I. WAS EVER WRITTEN UNTIL 11/26/19, 2-WEEKS AFTER I FILED MY GRIEVANCE UNDER GRIEVANCE NO. URF-1911-3102-27A, AS RETALIATION AND AN ADVERSE ACTION AGAINST ME FOR EXERCISING MY FIRST AMENDMENT RIGHTS. (SEE MISCONDUCT ATTACHED APPENDIX-A).
>
> THE ACTIONS OF C/O SMITH, SGT. BARNHARDT AND GRIEVANCE COORDINATOR M. MCLEAN, ENGAGING IN CORRUPT MISCONDUCT TO CIRCUMVENT AND BLATANTLY VIOLATE CLEARLY ESTABLISHED POLICY AND PROCEDURES TO STEAL AND DESTROY MY PROPERTY, RETALIATE AGAINST ME AND VIOLATE MY RIGHTS, CONSTITUTES AN "EGREGIOUS ABUSE OF AUTHORITY" IN VIOLATION OF THE SUBSTANTIVE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
>
>                        RELIEF REQUESTED
> 1. THAT MY CLASS-III GUILTY FINDING BY SGT. BARNHARDT BE REVERSED IMMEDIATELY FOR VIOLATIONS OF URF-OP 03.03.105C, (PAGE 1 OF 4);
> 2. THAT MY JP5-PLAYER IS IMMEDIATELY RETURNED TO ME, BECAUSE I LEGALLY PURCHASED IT AND IT IS NOT CONTRABAND;
> 3. THAT THE INFORMATION ON MY PLAYER CONSIDERED CONTRABAND BE REMOVED BY THE FACILITY.
> 4. THAT I AM GIVEN COMPENSATORY AND PUNITIVE DAMAGES FOR RETALIATION AND 1ST, 4TH AND 14TH AMENDMENT VIOLATIONS.
>
> DATED: DECEMBER 9, 2019.                            MR. T. TRIGGS #214324
>                                                    CHIPPEWA CORRECTIONAL FACILITY
> CC: DEPUTY WARDEN                                  4269 W. M80
>     PERSONAL FILE                                  KINCHELOE, MI 49784

(*Id.*, PageID.20.)

Like the Court in *Dykes v. Benson*, the undersigned is not persuaded by the argument that raising retaliation for the first time on appeal is sufficient to exhaust. No. 1:18-CV-664, 2020 WL 6597563, *9 (W.D. Mich. Mar. 13, 2020), *report and recommendation adopted as modified*, No. 1:18-CV-664, 2020 WL 4726701 (W.D. Mich. Aug. 14, 2020) ("Plaintiff contends that he exhausted the issue because he raised it during his appeal of the hearing. Plaintiff's contention is without merit.") (citation omitted). This Court has consistently held that to exhaust a misconduct-related claim, a prisoner must assert the claim in both the initial misconduct hearing and the subsequent motion for rehearing or appeal. *See McNees v. Torrey*, No. 1:19-CV-121, 2021 WL 1178627, *4 (W.D. Mich. Mar. 4, 2021), *report and recommendation adopted*, No. 1:19-CV-121, 2021 WL 1171958 (W.D. Mich. Mar. 29, 2021) (collecting cases). Because the record reflects that Triggs did not raise retaliation during the

13

December 4 misconduct hearing, the undersigned finds that there are no genuine issues of material fact.

### V. Recommendation

The undersigned respectfully recommends that the Court grant Sgt. Bernhardt's motion for summary judgment.

If the Court accepts this recommendation, this case will be dismissed.

Dated: December 16, 2021         /s/ *Maarten Vermaat*
                                 MAARTEN VERMAAT
                                 U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).